# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16-10032-EFM |
| SARAH HOPKINS, | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO SUPPRESS CELL PHONES

COMES NOW, the defendant, SARAH J. HOPKINS, by and through counsel, Douglas L. Adams, Jr., and respectfully submits this memorandum of law in support of her Motion to Suppress Cell Phones.

**I.      Facts of the case.**

On February 26, 2016, Defendant was arrested by ATF agents for purportedly providing a firearm to a convicted felon in violation of 18 U.S.C. § 922(d). (Report of Investigation of Agent Michael Downs, ¶¶ 4-5).

On February 27, 2016, Agent Fuller called Roy Hopkins, Defendant's father, and asked where Defendant's cell phones were. Roy acknowledged that they were in his house. Agent Fuller told Roy that he believed the phones contained evidence of a crime and that he wanted them. According to Agent Fuller's Report, Roy agreed to give him the phones. (Report of Investigation of Agent Fuller (hereinafter "Fuller Report"), ¶ 1).

According to Roy, Agent Fuller told him that, although they did not have a warrant, they could obtain one. Fuller told Roy not to make it difficult for them by requiring them to obtain a warrant.

Thereafter, Agents Fuller and O'Brien drove to Defendant's residence in Newton, Kansas. The agents met Roy outside of the residence. Roy informed the agents that the white Iphone belonged to the school district where Defendant worked, and that the Iphone in the black case was Defendant's personal cell phone. Roy then gave the two phones to the agents. (Fuller Report, ¶ 2).

The two phones were subsequently provided to the KBI, who obtained state search warrants to examine the contents of the phones. (Fuller Report, ¶ 3)

Additional facts will be recounted as needed in discussing the legal issues below.

**II. Roy Hopkins had no possessory interest in or joint control over Defendant's two cell phones; consequently, he could not consent to their warrantless seizure by ATF agents. Alternatively, any consent was not voluntary; rather, it was a submission to a show of lawful authority.**

    A.    **The Fourth Amendment and warrantless seizures of personal property.**

The Fourth Amendment to the United States Constitution provides, in relevant part, as follows:

> The right of the people *to be secure* in their persons, houses, papers, *and effects*, against unreasonable searches and *seizures*, shall not be violated

(Emphasis added).

In United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2367, 77 L.Ed.2d 110 (1983), the United States Supreme Court held: "In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." A warrantless seizure of personal property is permitted if the police have probable cause to believe the property contains evidence of a crime, and a recognized exception to the warrant requirement is present. *Id*.

### B. There was a seizure of Defendant's cell phones by ATF agents.

In United States v. Benoit, 713 F.3d 1, 9 (10th Cir. 2013), the Tenth Circuit recognized that the Fourth Amendment proscribes government action, and does not apply to a search or seizure by a private individual. However, the Benoit Court held that "if the government coerces, dominates or directs the actions of a private person conducting a search or seizure," then the Fourth Amendment is implicated. *Id*.

The determination of whether the government directed the actions of a private person is a two-step inquiry: 1) this Court must determine "whether the government knew of and acquiesced in the [private person's] intrusive conduct," and 2) "whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *Id*.

In addition, the Benoit Court held that "knowledge and acquiescence . . . encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action." *Id*.

In the present case, Agent Fuller affirmatively initiated, encouraged, and instigated the seizure of Defendant's cell phones when he called Roy Hopkins, told him the phones contained evidence, and told him that he wanted to have them. Thus, government agents knew of and acquiesced in Roy's seizure of the cell phones. Second, Roy intended to assist Agent Fuller in the seizure of the cell phones. Roy did not initiate the seizure, as did the defendant's wife in Benoit, nor was his conduct intended to further his own ends. Accordingly, both prongs of the Benoit test are satisfied. Agent Fuller's actions in directing Roy to seize Defendant's cell phones implicated the protections of the Fourth Amendment.

### C. Roy Hopkins could not consent to the seizure of Defendant's cell phones.

The only recognized exception to the warrant requirement that is applicable under the facts of this case is voluntary consent of a third-party. In United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the United States Supreme Court held that the government may establish third-party consent "when permission to search was obtained from a third party who possessed *common authority over or other sufficient relationship to the* premises or *effects sought to be inspected*."

In Benoit, the Tenth Circuit discussed the contours of the third-party consent exception:

> Voluntary consent by a third party with actual or apparent authority is a well-established exception to the warrant requirement. "A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes." Apparent authority may be found if "the facts available to the officer" at the time of the search would lead a person "of reasonable caution" to believe "that the consenting party had authority over the premises."

713 F.3d at 8.

First, it should be underscored that the issue in this case is not third-party consent to *search* because the agents never asked for consent to search, and never entered the residence of Roy Hopkins. Rather, the issue in this case is whether Roy Hopkins could give consent to the *seizure* of Defendant's cell phones.

Applying the rationale of both Matlock and Benoit, Roy did not have actual authority to consent to the seizure of Defendant's cell phones. He did not mutually use nor did he control the use of Defendant's cell phones. In fact, Roy had absolutely no possessory interest in the cell phones at all.

In addition, Roy did not have apparent authority to consent to the seizure of the cell phones. The agents were made fully aware that the white Iphone was the property of the school

district where Defendant worked, and the other phone was Defendant's personal cell phone. Thus, the facts available to the agents at the time of the seizure would lead a person of reasonable caution to believe that Roy Hopkins *did not* have authority to consent to the seizure of Defendant's cell phones.

Most often the issue of third-party consent arises in the context of whether a third-party can give consent to a search of premises over which two or more people have joint control and authority. Once that consent is established, then law enforcement officers may seize evidence under the plain view exception, assuming the requirements for the exception are present.

In the present case, however, the plain view exception is not at play for the obvious reason that Roy never consented for the agents to search his residence, and the agents never entered the residence. Thus, the ability of Roy to consent to a search of his residence because of his common authority over the premises did not give him authority to consent to the seizure of Defendant's personal property within the residence, property in which Roy had no possessory interest or common access.

The case law on this particular issue is somewhat sparse and not uniform. In 4 Wayne R. LaFave, Search and Seizure, § 8.3 (West, 4th ed. 2000), LaFave addresses this issue:

> As one court has noted, "[u]p to now, [the third-party consent] principle has found expression only in the context of consent to the search of property - - but there is no sound reason to restrict the principle rigidly to that milieu," as "the logic of third-party consent cant be adapted to seizures in some instances." This is not to suggest, however, that whenever a third party has capacity to consent to a search of an object, it follows that there is likewise capacity to consent to a seizure of the same object, *for nothing could be further from the truth*.

(Emphasis added).

Defendant submits the following cases as persuasive authority for this Court's consideration.

In People v. Blair, 321 Ill.App.3d 373, 748 N.E.2d 318 (2001), the Illinois Court of Appeals reversed the denial of the defendant's motion to suppress evidence of child pornography that was seized from his home computer. In Blair, the defendant had been arrested for disorderly conduct and was in jail. Two deputy sheriffs went to his residence, and asked the defendant's father for consent to search the residence. Once inside, the officers observed the defendant's computer. The defendant's father had no ownership interest of any kind in the computer; however, the officers later testified that the father consented for them to search and ultimately seize the computer. 321 Ill.App.3d at 376.

The Illinois Court of Appeal framed the issue thus: "In the case at bar, however, we must decide, not whether a third party's common authority gives him the power to consent to a search, but whether that authority may permit government seizure of the property." 321 Ill.App.3d at 378.

The Court of Appeals concluded that the father did not have the authority to consent to the seizure of the defendant's computer. The Blair Court reasoned that the rationale for third-party consent to search is that a person has "a diminished expectation of privacy in premises or effects to which others have access or over which others have control." 321 Ill.App.3d at 379. However, the Blair Court noted that the Fourth Amendment protects against not only unreasonable governmental interference with privacy but also possessory interests in property. Id. The Blair Court explained its holding as follows:

> The rationale for third-party consent searches resting, as it does, upon the diminished expectation of privacy attending a third party's common authority over the premises or effects to be searched, does not provide a sufficient basis for a

> third party's consent to the seizure of another's personal effects. While one who permits a third party access or control over his property has a diminished expectation of privacy, the third party's access or control does not similarly diminish the owner's expectation that he will retain possession of his property.
>
> A third party having common authority over premises or effects may permit a search of the premises or effects in his own right. In such a case, the third party is permitting others to do no more than the third party may do on his own, i.e. inspect the premises or effects. However, a third party may not in his own right consent to depriving the owner of possession of his property. The third party could not in his own right lawfully exclude the owner from possession of the property. Accordingly, the third party cannot permit others to do what he himself has no right to do.
>
> Therefore, we hold that the consent of a third party is ineffective to permit the government to seize property in which the third party has no actual or apparent ownership interest. Rather, a seizure is lawful only when the owner of the property consents to the seizure, there is a valid warrant for its seizure, or police are lawfully present and there is probable cause to believe the property is contraband, stolen property, or evidence of a crime.

321 Ill.App.3d at 379-80.

In State v. Lacey, 2009 MT 62, ¶¶ 45-49, 349 Mont. 371, 204 P.3d 1192 (2009), the Montana Supreme Court adopted the rationale of Blair, and held that a third party (Dozier) did not have the right or authority to consent for law enforcement officers to seize the defendant's computer. The Montana Supreme Court initially acknowledged that the evidence subsequently recovered from the computer via a federal search warrant would have been the fruit of the poisonous tree; however, the Supreme Court applied the "inevitable discovery" exception, and concluded that the computer would have been seized during execution of the search warrant at the defendant's residence the following day. 2009 MT 62, ¶¶ 53-56.

The property-based rationale of Blair and Lacey should be given additional weight by this Court given the recent return to Fourth Amendment property-based analysis by the United States Supreme Court. In Jones v. United States, __ U.S. __, 132 S.Ct. 945, 949, 181 L.Ed.2d 911

(2012), Justice Scalia wrote that Fourth Amendment rights do not rise or fall with the "reasonable expectation of privacy" formulation of Katz. "As explained, for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ("persons, houses, papers, and effects") it enumerates. Katz did not repudiate that understanding." 132 S.Ct. at 950. Also, in Florida v. Jardines, __ U.S. __, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013), the Supreme Court reiterated that property rights as well as privacy rights are protected by the Fourth Amendment.

In the current case, Defendant's cell phones certainly are included under the Fourth Amendment's "effects" language. She possessed a property interest in both phones (which she shared with her employer as to her work cell phone). Defendant's father did not have any possessory interest in or joint access to Defendant's phone; consequently, he could not, under the holdings of Blair and Lacey consent to the seizure of Defendant's phones. When Roy Hopkins seized Defendant's phones at the direction of ATF agents, the government interfered with Defendant's property interest in her cell phones without a warrant. That seizure violated the Fourth Amendment, and requires that the cell phones and any information retrieved from those cell phones must be suppressed as the fruit of the poisonous tree.

### D. Any consent Roy Hopkins gave to seizing Defendant's phones was not voluntary.

In Bumper v. North Carolina, 391 U.S. 543, 549, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), held that mere submission to a claim of lawful authority does not establish a voluntary consent to search:

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion -- albeit colorably lawful coercion. Where there is coercion there cannot be consent.

In <u>United States v. Tovar-Rico</u>, 61 F.3d 1529, 1535 (11th Cir. 1995), government agents asked the defendant for consent to search her house.  The agents informed the defendant that she did not have to permit a further search; however, if she refused, the agents would come back with a search warrant.  The Eleventh Circuit agreed with the district court that the defendant's "consent" to search was not voluntary.

In the present case, according to Roy Hopkins, the agents informed him that they did not have a search warrant to search for or seize Defendant's cell phones; however, they told him that they could obtain a search warrant.  The agents further purportedly told Roy that he should not "make it difficult for them" by demanding that they obtain a search warrant.  The agents effectively told Roy that he had no right to resist turning over Defendant's cell phones, and that the agents would obtain them by search warrant if Defendant "made it difficult" for them.  Under <u>Bumper</u> and <u>Tovar-Rico</u>, any "consent" Defendant gave for the officers to seize Defendant's cell phones was not voluntary; rather, it was the product of coercion.  Accordingly, the warrantless seizure of Defendant's cell phones violated the Fourth Amendment.

WHEREFORE, for the reasons stated above, Defendant requests that this Court enter order suppressing Defendant's cell phones and all information derived from the phones because they were seized by law enforcement in violation of the Fourth Amendment.

Respectfully submitted,

/s Douglas L. Adams, Jr.
Douglas L. Adams  #16092
Ney & Adams
200 N. Broadway, Suite 100
Wichita, Kansas 67202
(316) 264-0100
Fax: (316) 264-1771
Email: adams@naslaw.net
Attorney for Defendant Sarah J. Hopkins

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS CELL PHONES was delivered to the United States Attorney's Office and all other interested parties on this 29th day of June, 2016, through the electronic filing procedures of the United States District Court.

s/ Douglas L. Adams, Jr.<br>
Douglas L. Adams, #16092